UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR VENEGAS,<br><br>                               Plaintiff,<br><br>       v.<br><br>COUNTY OF RIVERSIDE, et al.,<br><br>                              Defendants. | Case No. 5:18-cv-02293-JLS-SHK<br><br>**ORDER ACCEPTING IN PART THE FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

      Pursuant to 28 U.S.C. § 636, the Court has reviewed the Second Amended Complaint ("SAC"), the record, and the Second Amended Report and Recommendation ("Second Amended R&R") of the United States Magistrate Judge. The Court has engaged in *de novo* review of those portions of the Second Amended R&R to which Defendants and Plaintiff have objected. As set forth herein, the Court ACCEPTS IN PART the findings and recommendations set forth in the Second Amended R&R.

      Below, the Court first addresses the parties' objections to the Second Amended R&R. Thereafter, the Court notes its disagreement with the conclusion reached by the Magistrate Judge as to the inapplicability of the Calfornia statutory tolling provision of Cal. Code Civ. Pro. § 352.1(a) as to claims asserted by an

incarcerated pretrial detainee. In the final section of this Order, the Court's rulings are set forth.

I. **PLAINTIFF'S OBJECTIONS TO THE SECOND AMENDED R&R HAVE NO MERIT**

For the first time in his Objections to the Second Amended R&R, Plaintiff attempts to reargue the timeliness of his initial placement in administrative segregation by citing the continuing violations doctrine. (*See* Pltf. Obj., Doc. 161.)

Claims based upon Plaintiff's initial placement in administrative segregation arose in February 2014, which is outside the limitations period, even as extended by the Court's application of § 352.1(a) tolling to Plaintiff's claims (discussed in detail *infra*). In contrast, claims regarding Plaintiff's continued placement in administrative segregation that are based on actions or omissions within the limitations period (as tolled by § 352.1(a), on or before September 30, 2014) survive summary judgment. By citing the continuous violations doctrine, Plaintiff argues actions even before September 30, 2014 should be considered timely. (*See id.* at 5-7 & 9-11.)[1]

Plaintiff argues that his initial placement in administrative segregation was part of a violation that continued from February 28, 2014 through September 8, 2020. (*Id.* at 6.) Plaintiff's reliance on the continuous violation doctrine arises too late. On December 14, 2018, the Magistrate Judge initially screened Plaintiff's original complaint. (*See* Order Dismissing Compl., Doc. 6.) At that time—well over six years ago—Plaintiff was informed that many of his claims were likely barred by the two-year statute of limitations for claims asserted pursuant to 42 U.S.C. § 1983. (*Id.* at 7.) Moreover, the Order expressly informed Plaintiff of the

---

[1] The Court's pinpoint citations are to the page numbers assigned by the Court's CM/ECF docketing system.

potential to rely on the continuing violation doctrine to avoid dismissal due to the limitations period. (*Id.*at 8-9.)

Plaintiff thereafter filed two amended complaints (Docs. 15 & 39), but never asserted his continuing violations theory in either of them. Similarly, on April 30, 2021, in their Motion for Summary Judgment, Defendants challenged the timeliness of Plaintiff's claims (Doc. 102 at 10-12), but Plaintiff did not assert a continuing violations theory in opposition thereto. Likewise, both the original R&R (Doc. 124) and the Amended R&R (Doc. 136) address the lack of timeliness of Plaintiff's claims, yet Plaintiff's objections do not raise the continuing violations theory. Only now, after the issuance of the Second Amended R&R, does Plaintiff object to the dismissal of untimely claims under the continuing violations doctrine. It is simply too late to assert this new theory.

After *de novo* review, Plaintiff's objections are therefore overruled.

## II. DEFENDANT'S OBJECTIONS

The Court likewise overrules Defendant's Objections. Defendant contends that summary judgment in favor of Deputy Hinkle as to the Fourteenth Amendment sexual assault claim should have been granted because, contrary to Plaintiff's arguments, patdown searches of an inmate's genitals is generally permissible due to the danger that inmates will conceal contraband there. Defendant also contends that the Second Amended R&R overstates Plaintiff's evidence on the incident.[2] (*See* Second Amended R&R, Doc. 158 at 39-41.)

The denial of summary judgment on this claim is not premised upon the mere fact that Deputy Hinkle conducted a patdown search that included Plaintiff's

---

[2] It is unclear whether Deputy Hinkle took Plaintiff to a "blind spot" before searching him. Whether video cameras recorded the area where Plaintiff was searched is not crucial to the Court's ruling. And whether Plaintiff actually provided evidence (in the form of Plaintiff's declaration) that Deputy Hinkle "smirked" at him rather than asserting a mere allegation (in the SAC) is likewise not necessary to the Court's ruling.

genitals which, on its own, does not violate an inmate's rights.  Nevertheless, depending upon context, an otherwise lawful patdown search of the inmate's genitals can constitute sexual assault, such as when that search is accompanied by the guard's sexual taunting of an inmate.  That is what Plaintiff alleges here.  (SAC ¶¶ 118-122.)  The Second Amended R&R correctly identified the applicable law.  (Doc. 158 at 38-41), and Plaintiff's declaration provides sufficient evidence to raise a triable issue of fact as to this claim.  (*See* Venegas Decl., Doc. 110 at ¶¶ 100 & 107.)

### III.  APPLICABILITY OF § 352.1(a) TO CLAIMS ASSERTED BY PRETRIAL DETAINEES

The Court ***declines to adopt*** the Second Amended R&R to the extent that it holds that § 352.1(a) of the California Code of Civil Procedure ***does not*** apply to toll the limitations period for Plaintiff's claims.  As to Plaintiff's claims, the effect of application of § 352.1(a) is to toll the statute of limitations for the entirety of the statutory maximum period of two years.  As a result, Plaintiff is entitled to the benefit of the limitations period applicable to § 1983 claims (two years), ***plus*** an additional two years pursuant to application of § 352.1(a), for a total of four years prior to the effective filing date of the present action.

#### A.  Background

California law provides that where a person who is entitled to bring a civil action is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life," that period of time (up to a maximum of two years), "is not a part of the time limited for the commencement of the action."  Cal. Code Civ. Pro. § 352.1(a).  Disagreement in the case law has arisen on the legal question of whether the term "imprisoned on a criminal charge" applies to someone who, like Plaintiff, was a pretrial detainee at the time the claim arose.

The original R&R held that § 352.1(a) should be applied to Plaintiff's claims, and that timely claims included those arising in the four-year period before the effective filing date (taking into account the mailbox rule) of September 30, 2018.  (Doc. 124 at 22.)  But after considering Defendants' Objections, the Magistrate Judge issued the Amended R&R (and later the Second Amended R&R), which hold to the contrary, *i.e.*, that Plaintiff may not avail himself of § 352.1(a).  (*See* Second Amended R&R, Doc. 158 at 24; Amended R&R, Doc. 136 at 24; Def. Obj., Doc. 126.)  As a result, as the issue currently stands before the Court, the Magistrate Judge has recommended that Defendants be granted summary judgment as to all claims accruing more than two years before September 30, 2018.

### B. Case Law Discussing Whether Pretrial Detainees Are Persons Who Are "Imprisoned on a Criminal Charge"

In a published decision in 1994, the Ninth Circuit construed § 352.1's predecessor statute[3] and expressly held that pretrial detainees are persons who are "imprisoned on a criminal charge." *Elliott v. City of Union City*, 25 F.3d 800, 802-03 (9th Cir. 1994).  The *Elliott* court acknowledged that the term "imprisoned" often refers to post-conviction incarceration rather than pretrial detention. *Id.* at 802 n2.  But it also noted that such an interpretation would render the relevant clause self-contradictory, as a "criminal charge" clearly refers to a stage of criminal proceedings that comes before a criminal conviction. *Id.*  Therefore, noting that the "disability" occasioned by incarceration occurred regardless of the stage of the proceedings, the *Elliott* court clarified that California's tolling provision "covers all post-arrest custody." *Id.* at 802-03.  In reaching this

---

[3] The operative statutory language is unchanged.  (*Compare* Cal. Code Civ. Pro. 352(a)(3) (1993) ("(a) If a person entitled to bring an action . . . be, at the time the cause of action accrued, . . . (3) Imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than life [the limitations period is tolled for this time period]") *with* Cal. Code Civ. Pro. § 352.1(a) (quoted *supra*).)

conclusion, the Ninth Circuit noted the absence of any guidance from California courts as to § 352(a)(3) (now § 352.1(a)) and was mindful of its duty to decide the question as it believed that the highest state court would decide it. *Id.* at 802 & n.3.

Since *Elliott*, a California appellate court weighed in on this issue in 2018, interpreting § 352.1 in a manner that would exclude the claims of pretrial detainees from the scope of the tolling provision's protection. *Austin v. Medicis*, 21 Cal.App.5th 577 (2018). Since *Austin*, federal courts have split as to the continued applicability of *Elliott*, questioning whether they must decline to apply *Elliott* in light of the duty of federal courts to decide questions of state law as they believe the highest state court would decide it. Indeed, in a pair of unpublished (but reasoned) memorandum decisions, different panels of the Ninth Circuit have reached polar opposite conclusions. *See Shaw v. Sacramento Cnty. Sheriff's Dep't*, 810 F. App'x 553 (9th Cir. 2020) (following *Austin*); *Mosteiro v. Simmons*, 2023 WL 5695998 (9th Cir. Sept. 5, 2023) (acknowledging *Austin* but following *Elliott*). Specifically, the Ninth Circuit has both (1) applied *Austin* to deny tolling to the otherwise untimely claims of a pretrial detainee (in *Shaw*) and (2) declined to apply *Austin* because the court deemed *Austin* unlikely to be adopted by the California Supreme Court. In the latter case (*Mosteiro*), the Ninth Circuit followed *Elliott*, applying § 352.1(a) to toll the limitations period of a pretrial detainee's claims. As unpublished dispositions, neither of these two cases is binding, but both inform the Court's present analysis.

*Shaw* found that the protection conferred by § 952.1(a) did not extend to pretrial detainees by observing, not incorrectly, that it was "obligated to follow' [*Austin*] in the absence of evidence that the California Supreme Court would rule to the contrary." *Shaw*, 810 F. App'x at 554 (quoting *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007)). *Shaw* does not further expound further on the relevant legal standard before drawing its conclusion. A more in-depth

explication of the relevant legal standard, set forth in the cases cited in *Ryman* (upon which *Shaw* relies) reveals that federal courts must give more than just a passing consideration to how the state's highest court might rule. *See Ryman*, 505 F.3d at 995 (citing *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) and *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996)). This more detailed legal standard is also forth in *Mosteiro* which, like *Ryman*, cites *Vestar Dev. II*. *See Mosteiro*, 2023 WL 5695998 at *1. Accordingly, this Court first examines the relevant legal standard before proceeding with its analysis.

        **C.**    **Legal Standard for Deference by Federal Courts to Opinions of State Intermediate Courts in the Absence of State Supreme Court Precedent**

In situations like this, where there is no precedent from a state's highest court, the United States Supreme Court has cautioned that federal courts must not disregard the decisions of intermediate state court, but must also look to other sources to "ascertain from all the available data what the state law is and apply it." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236-37 (1940). Specifically,

> [w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*West*, 311 U.S. at 237. Therefore, although the reasoned opinion of a state intermediate court "is a datum for ascertaining state law," the Ninth Circuit has identified other types of "persuasive data" referred to in *West* as including "decisions from other jurisdictions, statutes, treatises, and restatements." *Vestar Dev. II*, 249 F.3d at 960 (quotation marks omitted).

### D. There is Persuasive Data that the California Supreme Court Would Not Rule in Accordance with *Austin* and Therefore *Elliott* Applies to Toll the Limitations Period on Plaintiff's Claims

Here, the Court concludes that the California Supreme Court is unlikely to adopt *Austin* and would instead construe the phrase "imprisoned on a criminal charge" to apply to pretrial detainees. The interpretation reached by the *Austin* court cannot be squared with the statutory language. This Court concludes that the Supreme Court is likely to apply fundamental rules of statutory construction and reject *Austin*'s legislative history analysis as inconsistent with the plain meaning of the statute. In reaching this conclusion, the Court notes its agreement with the many observations set forth in *Mosteiro* and the district court opinion in *Prescott v. Contra Costa County*, 2024 WL 3090489 (N.D. Cal. 2024).

Specifically, the *Austin* decision is at odds with fundamental rules of statutory construction that have been adopted by by the California Supreme Court. *Mosteiro*, 2023 WL 5695998 at *2. In California, as elsewhere, statutory construction "begin[s] with the text, considering the ordinary meaning of the statutory language as well as the text of related provisions, terms used elsewhere in the statute, and the structure of the statutory scheme." *Dep't of Corr. & Rehab. v. Workers' Comp. Appeals Bd.*, 17 Cal. 5th 510, 520 (2025). Where "the text is clear, [the California Supreme Court] give[s] effect to it." *Id.* at 520-21. Consideration of "extrinsic sources, including the legislative history," is proper only where "the text is ambiguous." *Id.* at 521.

In finding ambiguity, the *Austin* court considered only a single word, i.e., "imprisoned," and did not consider the entirety of the clause, i.e., "imprisoned on a criminal charge," in violation of a fundamental California rule that statutory language must be interpreted in context rather than in isolation. *See Mosteiro*, 2023 WL 5695998 at *2; *accord Skidgel v. California Unemployment Ins. Appeals*

*Bd.*, 12 Cal. 5th 1, 20 (2021) ("But this approach to interpreting [a] statute—isolating one word and ignoring the rest of the language—is contrary to bedrock principles of statutory construction.") (cleaned up).

And by focusing on the one word it found to be ambiguous, *Austin* failed to consider the *unambiguous* meaning of "criminal charge" within the clause "imprisoned on a criminal charge." *Mosteiro*, 2023 WL 5695998 at *2. Reading all five words of the clause at issue (as required by California law)[4] rather than the single word in isolation, would have provided context for what was meant by the use of "imprisoned" within this five-word clause. *Id.* Considered in context, "imprisoned on a criminal charge" clearly includes those in custody pending trial. *Id.*

Indeed, given the unmistakable meaning of the term "criminal charge," which, even standing alone, is unambiguous, *Austin*'s interpretation renders this clause of § 352.1(a) self-contradictory. *Id.* at 3. Relatedly, *Austin*'s interpretation of § 952.1(a) violates the principle of statutory construction that statutes should be interpreted, where possible, in a manner that avoids making some words of the statute surplusage. *Mosteiro*, 2023 WL 5695998 at 3; *People v. Valencia*, 3 Cal. 5th 347, 357 (2017) (noting that statutes must be interpreted in a manner that will "accord significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose" and that "[a] construction making some words surplusage is to be avoided"). Specifically, *Austin*'s interpretation—that "imprisoned on a criminal charge" means only "those sentenced to a term of imprisonment in the state prison"—impermissibly renders superfluous the next clause of the statute, which applies the tolling provision to those "imprisoned . . . in

---

[4] *People v. Zambia*, 51 Cal. 4th 965, 972 (2011) ("The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible.") (cleaned up).

execution under the sentence of a criminal court for a term less than for life." Cal. Code Civ. Pro. § 352.1(a).

Here, in the absence of any ambiguity in the statutory language when considered as a whole, there is no reason to resort to examination of the legislative history of § 352.1(a). *Mosteiro*, 2023 WL 5695998 at 3; *Green v. State of California*, 42 Cal. 4th 254, 260 (2007) ("The statute's plain meaning controls the court's interpretation unless its words are ambiguous. If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent."). *Austin*'s interpretation of § 352.1(a) is driven entirely by legislative history.[5]  *See Prescott*, 2024 WL 3090489, at *4 (aptly observing that "[t]he *Austin* court's interpretation . . . appears to sidestep the plain meaning of the statute in favor of scrutinizing its legislative history"). Based upon its own rules of statutory construction, there is no basis for the California Supreme Court to follow *Austin* or to otherwise undertake a legislative history analysis of § 352.1(a).

Thus, "all available data" leads this Court to the conclusion "that there is convincing evidence that the California Supreme Court would interpret § 352.1(a)" in a manner consistent with *Elliott* and at odds with *Austin*. *Accord*, *Mosteiro*, 2023 at *4; *Prescott*, 2024 WL 3090489, at *5. Therefore, the Court applies *Elliott* and finds that Plaintiff's claims, which arose while he was a pretrial detainee, are entitled to the protection of § 952.1(a), and the limitations period was tolled for the maximum period of two years. As a result, Plaintiff is entitled to the benefit of the limitations period applicable to § 1983 claims (two years), ***plus*** the additional two years of statutory tolling, total of four years prior to the effective filing date of the present action.

---

[5] *Austin* distinguished *Elliot* on the basis that Elliot did not have the advantage of the legislative history examined by *Austin*. 21 Cal. App. 5th at 590 n.4. But because no legislative history analysis is warranted, this distinction drawn by *Austin* is unpersuasive. *Accord Prescott*, 2024 WL 3090489 at *4.

## IV. RULINGS

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment ("MSJ") is GRANTED IN PART and DENIED IN PART. Specifically, IT IS ORDERED that Defendants' MSJ is:

1) GRANTED as to ALL CLAIMS ARISING BEFORE SEPTEMBER 30, 2014 as outside the limitations period (as tolled by application of § 352.1(a));

2) GRANTED as to Plaintiff's FOURTEENTH AMENDMENT DUE PROCESS CLAIMS (both procedural and substantive) ARISING BEFORE MARCH 9, 2016, as barred by issue preclusion;

3) DENIED as to Plaintiff's FOURTEENTH AMENDMENT DUE PROCESS CLAIMS ARISING ON OR AFTER MARCH 9, 2016;

4) DENIED as to Plaintiff's FIRST AMENDMENT RETALIATION CLAIMS ARISING ON OR AFTER SEPTEMBER 30, 2014;

5) DENIED as to Plaintiff's FOURTEENTH AMENDMENT sexual assault claim against Deputy Hinkle; and

6) DENIED as to QUALIFIED IMMUNITY grounds.

As a result of these rulings, SUMMARY JUDGMENT IS GRANTED AS TO ALL CLAIMS IN FAVOR OF the following Defendants: Deputy Marthens, CO Perez, and Lt. Phillips. The claims against these Defendants arose outside of the limitations period, at various points in February 2014 through May 2014.

**IT IS SO ORDERED.**

Dated: May 13, 2025

_____
HON. JOSEPHINE L. STATON
United States District Judge